IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GEORGE A. JACKSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C. A. No. 05-823-SLR |
| ) | |
| STANLEY TAYLOR, et al., ) | JURY TRIAL REQUESTED |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

1. George A. Jackson and the thirty-one other named plaintiffs in this action are either present or former inmates of the Delaware Department of Correction ("DOC") at the Sussex Correctional Institution ("SCI") in Georgetown, Delaware.

2. Plaintiffs allege that the conditions for inmate workers at the SCI kitchen constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Of the thirty-two plaintiffs, only Plaintiff George Jackson has actively litigated this case.

3. The Complaint was filed on December 1, 2005 (D.I.2), then amended on September 22, 2006 (D.I.117, attachment 1). Although thirty-one (31) plaintiffs are named in the caption of the Amended Complaint, only sixteen (16) plaintiffs signed this document. *Id.* Moreover, some of the plaintiffs were not employed at SCI kitchen on July 19, 2005 when Plaintiff George Jackson filed his grievance regarding the working conditions at this facility. *See Exhibit 1, Affidavit of Christopher Senato.*

4. The Amended Complaint alleges that the SCI kitchen provides inadequate ventilation (particularly during the summer months), the kitchen facilities are unsanitary,

and the DOC staff who supervised the inmate workers at SCI kitchen were deliberately indifferent to the inmates' needs. *Id.* None of these counts are supported by evidence, or by the law.

5. The discovery period in this matter ended on April 1, 2008. D.I.193. Defendants now move for summary judgment on all counts of Plaintiffs' Amended Complaint.

## MEMORANDUM OF LAW

6. The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. However, once the moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

7. In this case, there are no genuine issues of material fact, so the Defendants are entitled to judgment as a matter of law.

## I. EIGHTH AMENDMENT CLAIMS

8. Plaintiffs contend that the working conditions at SCI kitchen violate their Eighth Amendment rights. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth

Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

9. The United States Supreme Court has established a two-part test that prisoners must meet in order to establish an Eighth Amendment violation. "First, the deprivation alleged must be, objectively, 'sufficiently serious'." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). Second, the prison official must have a "sufficiently culpable state of mind." That is, the prison official must be knowingly and intentionally deliberately indifferent to the inmate's health or safety. *Id.* (quoting *Wilson*, 501 U.S. at 297). "A plaintiff can only recover on a § 1983 claim if he can show 'intentional conduct.'" *Wilson v. Reinhart*, 2003 WL 21756393, at *3 (D. Del. July 29, 2003) (quoting *Davidson v. Dixon*, 386 F.Supp. 482, 487 (D. Del. 1974)).

10. Although the United States Constitution prohibits cruel and unusual punishment by prison officials, it "does not mandate comfortable prisons." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "*[E]xtreme deprivations* are required to make out a conditions of confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (emphasis supplied).

11. As part of the rehabilitative goals of the DOC, inmates at SCI prison are either enrolled in an educational program during their incarceration, or they are enrolled in vocational training. *See Exhibit 2, Affidavit of Treatment Administrator Patricia Ditto*. Selection to a particular vocational training is based, in part, upon an inmate's security

3

classification at SCI prison, and any underlying qualifications for the job. *Id.* Examples of vocational opportunities include laundry worker, groundskeeper, woodshop worker, janitor, kitchen worker, and educational tutor. These inmate workers are paid a nominal, hourly salary. Inmates are not assigned to a particular job as a form of punishment.

        12.     Inmates assigned to the SCI kitchen are trained by officers of the Department of Correction in food preparation, handling, safety and sanitation. *See Exhibit 1, Affidavit of Food Service Director Christopher Senato and Exhibit 3, Affidavit of Food Services Administrator Michael Knight.* The inmates are responsible for clean up of the kitchen facility at the end of the shift. In supervising and training the inmate workers on a daily basis, <u>the DOC Food Service Staff is subjected to the same kitchen conditions as the inmate kitchen workers</u>. Exhibit 1.

        13.     SCI kitchen provides the daily meals for the entire inmate population at Sussex Violation of Probation ("SVOP"), Sussex Work Release ("SWR") and SCI. This kitchen serves *more than 3000 meals to the inmate population each day*, and is regulated by the Board of Health for the State of Delaware. The kitchen is inspected by the state Board of Health to ensure compliance with health and safety standards. SCI kitchen has always met these state standards, including standards for safety and sanitation. *See Exhibits 1 and 3.*

        14.     In the warmer months, the SCI kitchen is cooled by numerous fans, both large fans on the floor and wall mounted fans. "The SCI kitchen is not air-conditioned. Admittedly, during the summer months conditions can become uncomfortable. The DOC kitchen staff however, is working under the same conditions as the inmate staff. While the DOC staff has an air-conditioned office where necessary administrative work is

4

performed, the majority of their time is spent in the kitchen training and overseeing the inmate staff. Additionally, there are no Board of Health requirements mandating air conditioning in kitchens, and it would not be unusual for a restaurant kitchen in the private sector to rely upon fans for cooling (and not have air conditioning), like SCI kitchen." *Exhibit 4, Affidavit of Food Service Administrator Michael Knight, ¶8.*

### A. SCI Kitchen Conditions Are Not "Sufficiently Serious"

15.   Plaintiffs cannot establish a constitutional deprivation that is sufficiently serious to satisfy the test for an Eighth Amendment claim. When deposed in this matter, Plaintiffs Jackson, Carl Walker and Vernon Truitt agreed that the kitchen conditions complained of in this action occur during the hottest days of the summer, and the coldest times in the winter.

16.   Plaintiffs have **_no evidence_** demonstrating that these conditions cause serious harm. Only fifteen (15) plaintiffs responded to Defendants' interrogatories[1], in which they were asked to "Identify in detail the precise injury or harm you allege was sustained as a result of the allegations in the complaint." D.I.145. The response from Plaintiffs was generally the same: either the Plaintiffs were "working in sweatshop type conditions, low air flow, high temperatures in the summer months, low temperature in the winter, **_not personal injuries_**" (DI.175; DI.172; D.I.163; D.I.161; D.I.159; and D.I.158; emphasis added), or Plaintiffs claimed to suffer from "heat exhaustion, mental anguish, pain discomfort, humiliation, and embarrassment" (See D.I.160; D.I.162; D.I.166; D.I.168; D.I.169; D.I.170; D.I.173; D.I.174; and D.I.176). While plaintiffs have alleged

---

1 The only plaintiffs who responded to these interrogatories were: George Jackson, Roderick Brown, James Johnson, Timothy Malloy, Anthony Morris, Rique Reynolds, Charles Sanders, Jose Serpa, Kevin Spivey, Roger Thomas, Joseph White, Frank Williams, Gilbert Williams, Roy Williamson, and Darus Young.

"uncomfortable" conditions during the warmest and coolest times of the year, the conditions were not caused by DOC employees, nor did they result in any serious or extreme deprivations. The operation of the SCI kitchen is in compliance with the standards established by the Board of Health. To argue a higher standard for this facility, Plaintiffs must concede that their deprivations were not "sufficiently serious" to rise to the level required for an Eighth Amendment claim. Therefore, plaintiffs cannot prevail on this first prong of the test.

### B. Plaintiffs Lack Standing To Bring These Claims

17.     Plaintiffs cannot maintain this lawsuit because they all lack standing. To claim a violation of a constitutional right, Plaintiffs must allege an actual injury. *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179 (1996). The requirement of actual injury "derives ultimately from the doctrine of standing." *Id*. As demonstrated in the preceding paragraph, no quantifiable injury has been alleged.

18.     Other than claiming exposure to higher than average temperatures in the SCI kitchen, plaintiffs have no evidence that they suffered physical injury. None of the plaintiffs produced any documentation demonstrating that they were treated for physical injuries caused by extreme temperatures or any other conditions complained of at SCI kitchen. While some of the plaintiffs claim that they suffered mental anguish, humiliation and embarrassment (see responses to Interrogatory #12 in D.I.160, D.I.162, D.I.166, D.I.168, and D.I.174), they are prohibited from asserting such claims "without a prior showing of physical injury." 42 U.S.C. 1997e(e).

19.     Moreover, not all of the named Plaintiffs were working at SCI kitchen on July 19, 2005, the date Plaintiff Jackson filed his emergency grievance. At the time

6

Plaintiff Jackson filed his grievance, the following inmates were not working in the SCI kitchen: Timothy Malloy, Rique Reynolds, Kevin Spivey, Lawrence Dickens, and Charles Sanders. *See Exhibit 1, Affidavit of Christopher Senato, ¶9.* Accordingly, these five plaintiffs must be dismissed from this action.

20. In addition, the pleadings were not signed by all named plaintiffs, as required by Rule 11(a) of the Federal Rules of Civil Procedure. In the Amended Complaint, there were sixteen (16) plaintiffs (Paxton Foreman, Jerome Green, Howard Parker, Vernon Truitt, Roderick Brown, Lawrence Dickens, Eldon Potts, Danny Quillen, Charles Sanders, Jose Serpa, Roger Thomas, William Turnage, Jerry Weston, Kashawn Weston, James Wilson and Gilbert Williams) listed in the caption of the Amended Complaint who never signed the document.

21. With the exception of George Jackson, the remainder of the plaintiffs never filed grievances pertaining to the kitchen conditions at SCI. Pursuant to the Prison Litigation Reform Act (PLRA), their actions must be dismissed, as they failed to exhaust their administrative remedies (See *infra*, for further discussion of the PLRA exhaustion requirements).

### C. Plaintiffs Cannot Establish *Mens Rea*

22. For the second prong of the test to prove an Eighth Amendment violation, plaintiffs cannot demonstrate that the defendants had a culpable state of mind.

23. "The infliction of punishment is a deliberate act intended to chastise or deter…. The thread common to all Eighth Amendment prison cases is that 'punishment' has been deliberately administered for a penal or disciplinary purpose." *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 2325 (1991)(internal citations omitted). Plaintiffs

7

cannot demonstrate anyone at the DOC acted to deter, chastise or punish the inmates who were working in the kitchen. As mentioned above, during the uncomfortable working conditions of which Plaintiffs complain, the DOC Food Service Staff remained with the inmates during their shift. Rather, the conditions complained of were directly related to the outdoor temperature, something over which the DOC Food Service Staff had no control. Furthermore, during the summer months, inmates housed at SCI's Medium Building lived in similar conditions, as this building has no air condition and is cooled exclusively by fans. There is no evidence that defendants acted with malicious intent.

24.    The absence of malicious intent by DOC staff is also reflected in Plaintiffs' allegations in the Amended Complaint. Paragraph 3 of the Amended Complaint states that SCI kitchen "represents imminent dangers to the health and well being of inmates and over/time correctional officers consuming food from the operation, especially during the summer months." D.I.117, Attachment 1. Plaintiffs cannot prove intent by DOC Food Service Staff to harm inmates through unsanitary kitchen conditions when the DOC Food Service Staff consumes the same food as the inmates. It is also important to note that none of the DOC staff have reported any illnesses or adverse condition as a result of SCI kitchen conditions. See Exhibit 1, ¶4.

### D. Failure to Establish Deliberate Indifference

25.    Plaintiffs also claim that the DOC Food Service Staff was deliberately indifference to the allegedly poor ventilation system at SCI kitchen. However, Plaintiffs have no evidence demonstrating that the DOC was knowingly and intentionally indifferent to the issue of kitchen ventilation. To the contrary, the DOC Food Service Staff, the SCI maintenance crew and outside vendors have taken steps to clean and

maintain the ventilation system at SCI kitchen. *See Exhibit 1, Affidavit of Christopher Senato, ¶7.* The outside vendors clean the ventilation system, and the DOC maintenance staff performs periodic preventative maintenance of the ventilation system several times every year. There is no basis to allege deliberate indifference by SCI staff on this issue.

26. The overwhelming evidence on SCI kitchen demonstrates that Plaintiffs were employed in a sanitary, safe working environment that met the standards of the Board of Health and provided them with occupational training during their term of incarceration. These conditions never came close to the extreme deprivations the Eighth Amendment is designed to prevent. Accordingly, judgment must be entered in favor of all defendants.

## II. *RESPONDEAT SUPERIOR* CLAIMS

27. Plaintiffs name Stanley Taylor (former Commissioner of the Department of Correction), Joyce Talley (DOC Bureau Chief), Tony Figario (Chief of Inspection/Security), Carl Anson (Chief of Maintenance at SCI), and Michael Knight (DOC Food Service Director), as defendants in this action. None of these defendants had any direct contact with the Plaintiffs, nor did they supervise inmate workers at SCI kitchen. However, plaintiffs believe that they should be held responsible for the kitchen conditions because of their supervisory positions. Plaintiffs' theory of liability is premised on the doctrine of *respondeat superior* because these defendants hold supervisory positions at the Department of Correction.

28. The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1988). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Personal involvement can be shown through assertions of personal direction, or actual knowledge and acquiescence. However, such assertions must be made with particularity. *Rode*, 845 F.2d at 1207.

29. Plaintiff does not assert claims against these Defendants with particularity. It is inconceivable that these five defendants could intervene on behalf of the plaintiffs when plaintiffs cannot establish that they suffered injury as a result of the kitchen conditions.

30. The instant complaint contains only vague and conclusory allegations of improper conduct that are wholly unsupported by evidence that would entitle plaintiffs to relief. Accordingly, Defendants Taylor, Talley, Figario, Anson and Knight are entitled to summary judgment in their favor.

### III. PLAINTIFFS' CLAIMS ARE BARRED BY THE PRISON LITIGATION REFORM ACT

31. Plaintiffs in this action brings a *pro se* complaint, filed while they were incarcerated, regarding the conditions of their confinement. The Plaintiffs allege claims under 42 *U.S.C.* § 1983. The Prison Litigation Reform Act ("PLRA") of 1995 became effective on April 26, 1996, and amended a variety of statutory provisions governing litigation by prisoners, specifically including those brought under 42 *U.S.C.* §1983. Accordingly, the PLRA is applicable to this matter.

32. The PLRA contains an "exhaustion of remedies" requirement. 42 *U.S.C.* 1997e(a) provides that:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title or any other Federal law, by
> a prisoner confined in any jail, prison, or other correctional

>facility until such administrative remedies as are available are exhausted.

A plaintiff must exhaust administrative remedies even where the grievance process would not provide him with the remedy that he is seeking in his federal court action. *Booth v. Churner*, 206 F.3d 289, 294-295 (3d Cir. 2000), aff'd, 532 U.S. 731 (2001). See also *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000) (holding that there is no "futility" exception to the prisoner exhaustion requirement).

      33.    The Third Circuit has held that the PLRA includes a "procedural default" component. Accordingly, an inmate is required to follow the grievance process through every appellate step in order to properly exhaust administrative remedies. See *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (The PLRA's "goals are obviously served by a procedural default rule because such a rule prevents an end-run around the exhaustion requirement").

      34.    Here, George Jackson was the only plaintiff who filed a grievance regarding the uncomfortable summer conditions of SCI kitchen. None of the other plaintiffs filed a grievance.

      35.    A plaintiff procedurally defaults when he fails to carry the grievance process to its administrative conclusion. Thus, the remaining Plaintiffs failed to exhaust their administrative remedies and are therefore barred from pursuing this action. For this reason, all Defendants are entitled to summary judgment, and Plaintiff's complaint should be dismissed.

## IV. QUALIFIED IMMUNITY

36. All named state defendants in this action are entitled to qualified immunity on Plaintiffs' Eighth Amendment claims. To determine whether a state official is entitled to qualified immunity, the court must conduct a two-part inquiry:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz,* 533 U.S. 194, 201 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.

37. In the case at bar, the defendants did not create a hazardous or unsafe condition at SCI kitchen. None of the plaintiffs ever requested medical treatment for any injuries that they may have sustained as a result of working at the SCI kitchen as described in the Amended Complaint. Therefore, reasonable officials in Defendants' circumstances could not know that their conduct would present a constitutional violation. Moreover, the conditions complained of were "acts of God"; Defendants have no way of controlling the external temperature at SCI.

38. Therefore, all Defendants are entitled to qualified immunity as a matter of law and cannot be held liable to Plaintiffs in their individual capacities.

**V. ELEVENTH AMENDMENT IMMUNITY - OFFICIAL CAPACITIES**

39. "[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

40. In this case, the State of Delaware has neither consented to Plaintiffs' suit nor waived its immunity. Therefore, under the Eleventh Amendment, none of the State Defendants can be held liable in their official capacities.

WHEREFORE, for the reasons set forth herein, Defendants respectfully request that this Court grant summary judgment in their favor.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

  /s/ Catherine Damavandi_____
Catherine Damavandi (ID # 3823)
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants

Dated: May 19, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GEORGE A. JACKSON, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    C. A. No. 05-823-SLR |
| | ) |
| STANLEY TAYLOR, et al., | )    JURY TRIAL REQUESTED |
| | ) |
|     Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2008, I electronically filed the attached *Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I further certify that on May 19, 2008, I caused the within document to be mailed to the non-registered parties on the attached list.

                                                          STATE OF DELAWARE
                                                          DEPARTMENT OF JUSTICE

                                                          /s/ Catherine Damavandi
                                                          Catherine Damavandi, ID#3823
                                                          Deputy Attorney General
                                                          Department of Justice
                                                          Carvel State Bldg., 6th Fl.,
                                                          820 N. French Street
                                                          Wilmington, DE  19801
                                                          catherine.damavandi@state.de.us

*List of Non-Registered Parties*

Charles Blizzard
SBI #166670
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Geogetown, DE 19947

Roderick Brown
SBI# 315954
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

John F. Davis
SBI #263753
16513 Coastal Hwy
Lewes, DE 19958

Lawrence B. Dickens
SBI #124570
Sussex Correctional Center
P.O. Box 500
Georgetown, DE 19947

Jerome Green
SBI# 147772
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

George A. Jackson
SBI #171250
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

James Johnson
SBI 155123
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Samuel Jones
SBI# 465297
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Timothy L. Malloy
SBI #171278
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Anthony Morris
SBI# 300363
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Howard Parker
SBI # 165324
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Eldon Potts
SBI# 211193
22602 Piney Branch Court
Lincoln, DE 19960

Rique Reynolds
SBI# 266486
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Charles B. Sanders
SBI #160428
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Darwin A. Savage
SBI #232561
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Jose Serpa
SBI# 350322
SUSSEX CORRECTIONAL INSTITUTE
P.O. Box 500
Georgetown, DE 19947

Kevin Spivey  
SBI# 258693  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Vernon Truitt  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Joseph White  
SBI#082985  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Gilbert Williams  
SBI# 137575  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Adrian Wright  
SBI #169921  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Roger Thomas  
SBI #292590  
22249 Cubbage Pond Road  
Lincoln, DE 19960  

Carl Walker  
SBI #173378  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Frank Williams  
SBI #261867  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Roy R. Williamson  
SBI #291856  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947  

Darus Young  
SBI# 00282852  
SUSSEX CORRECTIONAL INSTITUTE  
P.O. Box 500  
Georgetown, DE 19947