# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GEORGE A. JACKSON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A No. 05-823-SLR |
| | ) |
| STANLEY TAYLOR, et al., | ) JURY TRIAL REQUESTED |
| | ) |
| Defendants. | ) |

### DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

James Johnson declares under penalty of perjury:

1. I am a plaintiff in the above entitled case. I make this declaration in opposition to defendants' motion for summary judgment on the Eighth Amendment condition of confinement claim on the basis of the "old-side" kitchen area, at the SCI prison.

2. Defendant Senato's Affidavit claim, in summary, that DOC Food Staff trained inmate kitchen workers, that there has been no instances of any inmate workers or DOC Food Staff have been injured by the condition of the kitchen. Defendant Senato claim SCI maintenance crew performs preventive maintenance on the ventilation exhaust system, by replacement fan belts on the hood motors.

3. Defendant Knight's Affidavit claim, in summary, that there are monthly inspections which includes checking the exhaust ventilation systems by the facility's maintenance staff. Defendant Knight also claim that a parasite (1) found in a beef cube steak, and it was pointing towards food tampering.

4. The Defendants' Affidavit of Patricia Ditto, in summary, claim that inmate kitchen workers are not force to work in the kitchen.

5. I started working in the SCI kitchen in 1995, when there was only the "old-side" kitchen, whereas the outdated and old ventilation hood system never worked. When they expanded the kitchen in 1997 by adding the "new-side" which

included a brand new exhaust hood ventilation system. But when it came time
for the outside contractors to replace the outdated and non-working exhaust
hood ventialation system on the "old-side" kitchen, they institution did not
want the contractors to take out the unit because it would leave a hole in the
roof, which an inmate could escape. So the "old-side" ventilation system was
never replace.    I was the baker during that time, and I work only in the
"old-side" kitchen area. The exhaust hood ventilation system on the "old-side"
never worked. In fact, there are no switches or buttoms on the unit to start
the system. I had to bake cakes, pies, biscuits and other bake desserts with an
inadequate exhaust hood ventialation system that remove no heat, fumes, gases,
and smoke from the kitchen area. I had to use floor fans which was blowwing only
hot air, dust and lint.

    6.  I was never train by DOC Food Staff. In fact, I was the most experienced
cooked in the kitchen. Contrary to Defendant Senato's Affidavit, in 2002 I became
so hot and over heated that I was sent to the medical department, and they diagnose
me with heat exhaustion and order me off work for 3 days. It's all in the medical
records here at SCI prison.

    7.  When I was housed in the Merit Building and worked in the kitchen up
to 7/1/06. The policy was, if you are classify to work in the kitchen and refused
or quit, you will received a class I write up and your points would increased and
you will be moved to higher security building. After 7/1/06, the kitchen jobs was
moved to the Medium Building, and  in order to be on C or D tier, if inmate kitchen
workers refuse or quit working, he would received a class I write-up and move
to either to the hole, Maximum Security Building (MSB), or transfer to another
prison.

    8.  On July 20, 2005, I was the first cook in charge of they contaminated
beef cube steaks. I was there when defendant Adkins returned from the Pretrial
building with the pan of beef cubes. As we torn open the cube steaks, we notice
numerous of worms inside the meat. We put them in a sealed trashed can and place

them in the vegetable cooling walk-in, and then someone from the outside
came and took them away. I never heard anything more on the beef cube steaks.
There's no way someone could put **all them worms** into those beef cube steaks. The
prison 404 incident report that was written by the DOC Food Staff here at the
SCI prison confirmed the numerous of worms.

9. The foregoing factual allegations create a geniune issue of material fact
and will, if proved at trial, entitle me to judgment.

James Johnson

SWORN AND SUBSCRIBED before me this 10th day of June, @008.

Notary

JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 28, 2009

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GEORGE A. JACKSON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 05-823-SLR |
| | ) |
| STANLEY TAYLOR, et al., | ) JURY TRIAL REQUESTED |
| | ) |
| Defendants. | ) |

## DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Darius Young declares under penalty of perjury:

1. I am a plaintiff in the above entitled case. I make this declaration in opposition to defendants' motion for summary judgment on the Eighth Amendment violation at the SCI "old-side" kitchen.

2. The defendants' affidavits claim, in summary, that the DOC Food Sraff train inmate kitchen workers, that the inspections was unannounced at the SCI kitchen. They claim that inmate workers wear not allowed to wear proper winter clothing due to Food safety rules, that they work side by side with inmate kitchen workers during the shift. They state that the ventiltation is to pull smoke, odQrs, and stream from the kitchen. They claim that DOC Inspection Reports on file reflect no signs of pest infestion. And finally, Treatment Administrator sworn that "inmates are not force" to work in the kitchen.

3. I was employed in the kitchen for about $2\frac{1}{2}$ years. When I started from day one, every job duty I performed, I was trained by an experienced inmate kitchen worker.

4. I worked in the "old-side" area of the kitchen, and the whole time I was there the exhaust hood ventialtion system never worked. In fact, it is so old and out dated that there is no buttons or switches on the unit as to cut on or turn off. But the "new-side" exhaust hood ventialtion sytems has the ability

with the switches and buttons to be turn on and off.

5. The floors on the "old-side" during the extreme humid days remained wet and damp to the point that you have to "tip toe" through the area carrying food and other items through the kitchen to keep from falling down. I have witness many of inmates workers fall  down.

6. As for these unannounced inspection visits, there were many of days we had to clean the kitchen many days prior to the day of the actual inspection. We always knew when an inspection was going to be conducted.

7. The kitchen had two temperatures. Hot or Cold. During the winter months if you cut the heat on in the kitchen, it became so hot and unbearable. So, DOC Food Staff would not cut it on.  During the summer months, what ever the temperature is outside of the kitchen, you could add 50 degrees to the temparatue compare to the "old-side" kitchen area (if its 90 degrees outside, its around 140 degrees). I have astama, and I had to use my inhaler more. There are times when I had to be seen by the medical staff from the excessive heat, and they would advised me to drink plenty of water. But the consequences from that is, there is only one toliet seat in the kitchen for the use of 22-25 inmates and casued you to wait long periods of discomfort.

8. The only time DOC Food Staff would be on thefloor is if its a problem, or they are opening untensil boxes checking carts or roll call. But the rest of the time they remained temperature control office or they be in the "new-side" kitchen area.

9. If an inmate refused to work in the kitchen or quit his kitchen job, he would received a class I write-up, and moved to higher security with increase points.

10. The foreoing factual alleagtions create a genuine issue of material fact and will, if proved at trial, entitle me to judgment.

Daruis Young

SWORN AND SUBSCRIBED before me this 5 day of June, 2008.

Notary

JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 28, 2009

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GEORGE A. JACKSON, et al.,           )
                                     )
          Plaintiffs,                )
                                     )
     v.                              )  C.A. No. 05-823-SLR
                                     )
STANLEY TAYLOR, et al.,              )  JURY TRIAL REQUESTED
                                     )
          Defendants.                )


STATE OF DELAWARE)

                  )   **AFFIDAVIT OF CHARLES BLIZZARD**

COUNTY OF SUSSEX )

### DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Charles Blizzard declares under penalty of perjury of perjury:

1. I am a plaintiff in the above entitled cse. I make this declaration in opposition to defendants' motion for summary judgment on this action seeking class status on behalf of all individuals who have been committed to the custody of the DDOC and who have been, are now, or in the future will be, classified to work at the SCI Main kitchen.

2. The defendants' affidavits claim, in summary, that "inmates are not force to work" in the kitchen, that DOC Food Service staff train inmate workers, that Department of Health and Service forbid winter clothing in the work area. They claim they are under the "same conditions" in the kitchen as inmate workers, that there "from April 1997 to the present, there has never been an instance where an inmate worker..." health was affected due to kitchen temperatures. They state that DOC Food Staff works alongside the inmate kitchen workers.

3. The defendants are not entiled to summary judgment because there are genuine issues of material fact to be resolved. These issues are identified in the accompanying Statement of Disputed Factual Issues filed by Plaintiff George A. Jackson. The facts are set out in this declaration.

4.  I stared at the SCI kitchen 4/4/00 and was classified to another job in the summer of 2006.

5.  I did respond to the Defendants' Interrogatories concerning the conditions at the SCI kitchen. Medical records will show where I was once diagnose with heat dehydration.

6.  As a prep cook, I was train by the inmates workers who were 1st and 2nd cooks. When I became promoted to 2nd cook, I had to train inmate workers under myself which became very stressful at times.

7.  The floor fans during the summer months only became cool when the temperature outside became cool, otherwise the fan only blew hot air to an already extreme heated condition.

8.  DOC Food Staff stayed most of the time in the temperature contol office. The most time I seen them on the floor was when opening and closing the locks on the utensil boxes after they was washed.

9. Despite the fact that inmates was denied adequate clothing during the extreme cold days of the winter, DOC Food Staff were observed wearing DOC issued winter coats, tobogans(hats), gloves, including DOC issued thermal wear. In fact, Defendant Senato never made any attempt to acquire thermal wear for the inmate kitchen workers, despite thermal wear is routinely issued to most outside inmates job.

10. As a cook, I was criticized many times for profusely sweating over the food being prepared in the "old-side" kitchen area. The "new-side" kitchen ventilation system works great.

11.  When I use to bake chicken, burgers, fish and and other food item on "old-side" kitchen area in those gas powered convection oven, I use a thermometer and the temperature for that "old-side" area persistently stayed over 100 degrees.

12. When I use to cook/bake on the "old-side area, I went to the kitchen staff office complaining that I felt like I was dying over there. I would get responses such as, "Go back over there and die then." When you would go to medical, they would listed as dehydration and instruct you to drink plenty of water.

13. The consequenses of drinking plenty of water is that there is only one toilet seat for up to 22-25 inmates to use. And you are force to wait long durations to get to relieved yourself. Especially, since alot of people are defecating due to eating so much during the shift.

14. I consider mysel to be a hard worker and take pride in my work. I strive to be the best but at the end, I strove to get out of the kitchen by trying to find another job. I don't mind working but when I feel like I'm being punished and abused, its time to move on.

15. During the filing of this action and the time I worked in the kitchen, if an inmate would quit or get fired from the kitchen without first being classified out, he would get a major prison infraction which means his points would increase and that inmate would be moved immediately from the Merit building to a higher security building.

16. Contrary to Defendant Senato's affidavit, a numerous of inmates and DOC Staff has been injured and received medical attention, due to the extreme humidity on the "old-side" kitchen which creates the floor in that area to constantly sweat, which people have slipped and fallen.

17. The foregoing factual allegations create a geniune issued of material fact and will, if proved at trial, entiled me to judgment.

_Charles F. Blizzard_
Charles Blizzard

SWORN AND SUBSCRIBED before me this 3rd day of ~~May~~ June, 2008.

_Judith Ann Lederman_
Notary

JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 28, 2009

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GEORGE A. JACKSON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No 05-823-SLR |
| | ) |
| STANLEY TAYLOR, et al., | ) JURY TRIAL REQUESTED |
| | ) |
| Defendants. | ) |

## DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Darwin A. Savage declares under penalty of perjury:

I am a plaintif in the above entitled case. I make this declaration in opposition to defendants' motion for summary judgment on the Eighth Amendment condition of confinement claim against the named defendants.

2. The defendants' affadivits claim, in summary, that they train inmate kitchen workers, that there never been an instance where inmate kitchen worker or DOC Food Service Staff's health was affected due to kitchen temperature. They state that DOC Food Staff are exposed to the same temperatures and conditions.

3. The defendants are not entieled to summary judgment because there are genuine issues of material fact to be resolved.

4. When I fist started in the kitchen, I was assigned to work in the "old-side" kitchen area as a diet cook asistance. I was trained by inmate George A. Jackson who had worked in the kitchen longer than any other inmate or DOC Food Service Staff. He was the head diet cook and during the filing of this action, Plaintiff Jackson had worked in the kitchen since November, 1992.

5. During the time I worked in the kitchen, I remember when it was so hot and humid on the "old-side" kitchen that the floors remain wet and I personally slip and fell and hurt my back. The kitchen staff sent me to the medical

department, and they gave me time off from the kitchen. Due to the inadequate ventilation system on the "old-side" kitchen, whatever the temperatures are outside it would substantially increased inside due to all the commericial size equipment being operated.

6. DOC Food Staff, are not exposed to the same excessive condition through the day. They have the luxury to sit in the office as they want while inmate kitchen workers must remanied in the excessive and extreme conditions for the duration of the shift.

7. Contrary to defendants' affidavits, during the time I worked in the kitchen, if you refused to work or quit as an inmate kitchen worker, you would received a major prison infraction, immediate classification, where you will received more points , and classify to an higher security building.

8. The foregoing factual allegations create a genuine issue of material fact and will, if proven at trial, entitle me to judgment.

_Darwin Savage_
Darwin Savage

SWORD AND SUBSCRIBED to me on this 5th day of June, 2008.

_Judith Ann Lederman_
Notary Public

JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 28, 2009

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
GEORGE A. JACKSON, et al.,      )
                                )
            Plaintiffs,         )
                                )
      v.                        )   C.A. No. 05-823-SLR
                                )
STANLEY TAYLOR, et al.,         )   JURY TRIAL REQUESTED
                                )
            Defendants.         )
```

## DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Carl Walker declares under penalty of perjury:

1.  I am a plaintiff in the above entitled case. I make this declaration in opposition to defendants' motion for summary judgment on the claim of excessive heat and extreme cold at the SCI kitchen "old-side" work area.

2.  The Affidavit of Michael Knight claim, in summary, that only one beef cube steak was reported with parsite.  The Affidavit of Patrica Ditto claim that inmates are and was not force to work in the kitchen, and Affidavit of Chris Senato claim in summary, that preventive maintenance is regular perform.

3.  The defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved.

4.  I am currently working in the SCI kitchen, I state that the working condition in the kitchen has not change since the filing of this action. There is a defective ventilation system on the "old-side" kitchen area, whereas most of the meals are prepared.  During the extreme winter months the kitchen is extremely cold, while during the summer months the kitchen heat in the kitchen is excessive. Cooks are profusely sweating in the food because the "old-side exhaust hood ventilation system does not operate as efficiently as the "new-side" exhaust hood ventilation

system.

5. We are told to drink plenty of water, but you must wait long periods
to get access to the one (1) toilet seat bathroom for 25 inmate kitchen workers to
use. Inmates must also use the one toilet seat bathroom to defecate, while other
inmates have wait in pain and discomfort and further mental anguish.

6. As an employee of the kitchen when I was housed in the Merit building,
it was Defendant Senato and Patrica Ditto policy that if an inmate quit, refuse to d
work or get fired from the kitchen, you would receive a major prison infraction which
would increase yuor points and be move immediately out of the air condition cool
Merit building.

7. Contrary to defendants' affidavit, I sum up my personal experience
in my oral deposition at the prison. Nothing has changed since the filing of this
action in regards to the extreme temperatures.

8. The foregoing factual allegations create a genuine issue of material fact
and will, if proved at trial, entitle me to judgment.    plan

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that
the foregoing is true and correct.

DATED:  June 26, 2008

Carl M. Walker
Carl M. Walker#00173378

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GEORGE A. JACKSON, et al.,      )
                                )
            Plaintiffs,         )
                                )
    v.                          )   C.A. No. 05-823-SLR
                                )
STANLEY TAYLOR, et al.,         )   JURY TRIAL REQUESTED
                                )
            Defendants.         )

STATE OF DELAWARE)

                                **AFFIDAVIT OF RIQUE REYNOLDS**

COUNTY OF SUSSEX)

RIQUE REYNOLDS, being duly sworn, deposes and says:

1. I am a plaintiff and witnesss in this case. I make this affidavit in opposition to Defendants' Motion for Summary Judgment.

2. I was classified to work at the SCI Main kitchen between 12/27/01-11/26/02. During all relevant times I was housed in the Merit Building with minimum high/security. I had to work in the kitchen, or received a major prison infraction (Class I). If found guilty, I would received penalty points and move immediately to an higher security building such as Medium or P.I. Buildings. During my time in the kitchen, inmate kitchen workers were constantly being threaten to received a major write and move to a higher security building.

3. On information and belief, the above practice was approved by Food Service Director Christopher Senato, and Treatment Administrator Patricia Ditto who is also the supervisor of the classification staff.

4. During the time that I worked in the kitchen, I was trained by fellow inmate kitchen workers to do whatevr job that was assigned to me. No DOC Food Staff ever trained me to performed any dutie.

5. I witness only rare ocassion were DOC Food Staff would work side by side with inmate kitchen workers in the preparation of meals.

6. I personally observed and witness during the cold to freezing winter months (especially the 3:00 am to 10:30 am shift), I was force to work under extreme cold condition without the benefit of adequate winter clothing (DOC issued: jackets, thermal wear, tobagans, ect.) But DOC Food Service Staff, would be permitted to their DOC issued winter coats, ear muffs, gloves, thermal wear and hats when they leaved the heated office to entered the cold work place.

7. I personally experience working under excessive heat and extreme humidity conditions while in the dishroom area. The excessive heat and extreme humidity in that area causes the floor and wall to constantly "sweat" while making the walking conditions unsafe. I personally have fallen, and I've witness numerous of other inmates fall and been hurt. I experience lack of oxygen due to extreme humidity.

8. When I was in the SCI kitchen, the ventilation system on the "old-side" kitchen never worked. But the ventilation system in the "new-side" kitchen work adequately no matter what the out doors temperature was.

9. During the shift, inmate kitchen workers remain in the excessive heat/ humidity and extreme cold during the entire shift, whereas the DOC Food Service has the luxury of going into the air condition cool and heated office during those extreme work condition.

10. I have made these statements based upon my personal knowledge and experience while as an inmate kitchen worker.

_Rique Reynolds_
Rique Reynolds

SWORD AND SUBSCRIBED before me this _29th_ day of May, 2008.

_Judith Ann Lederman_
Notary

**JUDITH ANN LEDERMAN**
**NOTARY PUBLIC, STATE OF DELAWARE**
My Commission Expires August 28, 2009