IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GEORGE JACKSON, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Civ. No. 05-823-SLR-LPS |
| | : |
| STANLEY TAYLOR, et al., | : |
| | : |
| Defendants. | : |

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is an Eighth Amendment conditions of confinement case. Plaintiffs, inmates at the Sussex Correctional Institution ("SCI") who are or were workers in the SCI Main Kitchen Unit, bring a putative class action against various Delaware Department of Corrections administrators and SCI kitchen employees pursuant to 42 U.S.C. § 1983, alleging that the conditions in the "old side" of the kitchen are so unsanitary and hazardous to their health as to violate the Cruel and Unusual Punishments Clause of the Eighth Amendment. Plaintiffs seek class certification, a declaratory judgment that their constitutional rights have been violated, injunctive relief, money damages "in excess of $100,000," and attorney's fees. Defendants have filed a motion for summary judgment. For the reasons explained below, I recommend that summary judgment be granted to defendants.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

**The Parties**

The Amended Complaint lists thirty-two plaintiffs – seven of whom have since been terminated from this action[2] – all of whom are SCI inmates who were or are currently assigned to perform kitchen duties.[3] The lead plaintiff is George A. Jackson. Plaintiffs allege that, while they were not forced to work in the SCI kitchen, any inmate who refused to accept or who quit an assignment to kitchen duty would be cited for a major prison infraction and transferred to a higher security building without air-conditioning. (D.I. 64, D.I. 270, D.I. 271)

The Amended Complaint names the following defendants: Stanley Taylor, Commissioner of the Delaware Department of Corrections ("DOC"); Joyce Talley, Bureau Chief of Management Services, DOC; Tony Figario, Chief of Inspections/Security, DOC; Carl Anson, Chief of Maintenance, SCI; Michael Knight, Correctional Food Service Administrator, SCI; and Chris Senato, Joseph Atkins, Debbie Melvin, Richard Crockett, Robert Manuel, Darrell Mullins,

---

[1] Where there are disputes of fact, all reasonable inferences are drawn in plaintiffs' favor. As is evident from my recommendation to grant summary judgment, I do not believe there are genuine disputes of material fact.

[2] Plaintiff James Wilson was dismissed from this action at his request. (D.I. 65) Plaintiffs Adrian Wright, Paxton Lee Foreman, William Turnage, Danny Quillen, Jerry Weston, and Kashawn Weston were terminated by the Court for failure to submit documentation required to proceed *in forma pauperis*. (D.I. 69)

[3] The remaining plaintiffs are: George A. Jackson, Darius Young, Charles Blizzard, James Johnson, John F. Davis, Kevin Spivey, Samuel Jones, Rique Reynolds, Joseph White, Anthony Morris, Roy R. Williamson, Carl Walker, Darwin A. Savage, Timothy L. Malloy, Frank Williams, Gilbert Williams, Charles B. Sanders, Howard Parker, Roderick Brown, Roger Thomas, Lawrence B. Dickens, Eldon Potts, Jerome Green, Vernon Truitt, and Jose Serpa. (D.I. 117 Ex. 1 at 1-2)

Wenston White, Steven Raynor, and Bethany Evans, food service employees, SCI.[4] (D.I. 117 Ex. 1 at 1-2) Plaintiffs claim that defendants have failed to provide inmate kitchen employees "with the basic necessities of life, including a healthy habilitative environment, personal safety, food and health care;" and also failed to train food service employees to "respond appropriately to a grossly inadequate . . . unsanitary food service environment." (D.I. 117 Ex. 1 at 6)

**Alleged Conditions in the SCI "Old-Side" Kitchen**

Plaintiffs' Amended Complaint alleges that the SCI Main Kitchen Unit is divided into two sections. The "old side" was built in the 1960s and the "new side" in approximately 1997. (D.I. 117 Ex. 1 at 5) Both sides of the kitchen contain commercial cooking equipment featuring exhaust ventilation systems to reduce excessive heat, humidity, and fumes. *Id.* Plaintiffs allege that the "old side" ventilation system has not worked since at least 1997, and that the inadequate ventilation in the "old side" area has resulted in "excessive heat [] and extreme humidity with the effect of creating unsanitary conditions and a safety hazard" to inmates assigned to work in the area. *Id.* Specifically, plaintiffs allege injuries related to extreme temperatures, food contamination, and inadequate training.

Several plaintiffs allege that they have suffered from heat exhaustion as a consequence of working in the "old side" kitchen. (D.I. 176 ¶ 12 (Jackson); D.I. 177 ¶ 12 (Savage); D.I. 266 ¶ 6 (Johnson); D.I. 168 ¶ 12 (Morris); D.I. 174 ¶ 12 (Williams)) These plaintiffs claim that DOC food staff are not susceptible to heat-induced illness because they remain in a temperature-

---

[4]Defendants deny that Figario is Chief of Inspections/Security for DOC and that Anson is Chief of Maintenance at SCI. (D.I. 135) They further claim that Crockett, Mullins, and Raynor were not served with the Amended Complaint. *Id.* Plaintiffs have not responded to these allegations. Because I recommend that summary judgment be granted for all defendants, I need not reach the issue of the proper number of defendants or their correct titles.

controlled office, off-limits to inmate workers, and come out only at brief intervals. (D.I. 264 ¶ 6; D.I. 265 ¶ 8; D.I. 270 ¶ 9; D.I. 275 ¶ 6)

Plaintiffs further claim that the excessive humidity in the kitchen causes the floor to become wet and slippery, which has resulted in injuries to inmate staff. Plaintiff Savage alleges that on one occasion "it was so hot and humid on the 'old-side' kitchen that the floors remain[ed] wet and I personally slip[ped] and fell and hurt my back. . . . [T]he medical department . . . gave me time off from the kitchen." (D.I. 264 Savage Decl. ¶ 5) Similarly, Plaintiff Young states: "The floors on the 'old-side' during the extreme humid days remained wet and damp to the point that you have to 'tip-toe' through the area . . . to keep from falling down. I have witness[ed] many [] inmate workers fall down." (D.I. 265 Young Decl. ¶ 5)

Other injuries linked to the excessive kitchen heat by plaintiffs include "eye irritation from . . . high levels of dusts, fumes, vapors, or gases" (D.I. 176 Jackson Decl. ¶ 12), worsening asthma (D.I. 265 Young Decl. ¶ 7), and dehydration (D.I. 276 Ex. C Blizzard Decl. ¶ 12).[5]

Plaintiffs further allege that "persistent pest infestation" exists in the "old side" kitchen, resulting in the preparation of contaminated food. They claim that SCI has been cited by the Board of Health for pest infestation. (D.I. 275 ¶ 10)[6] More specifically, Plaintiff Johnson alleges

---

[5]Plaintiffs also claim that a particularly vulnerable subset of inmate kitchen employees – elderly inmate workers "and some inmates who had chronic medical condition[s] (HIV, asthma, and diabet[es])" – had to work under these conditions." (D.I. 275 at 3) However, plaintiffs do not identify which, if any, of these inmates are parties to this lawsuit, describe a link between the old side kitchen conditions and the worsening of these workers' chronic conditions, or otherwise state an injury to these plaintiffs.

[6]Defendants deny the allegation. Food Service Director Senato states in his affidavit that the SCI kitchen "is inspected once a year by the State of Delaware Board of Health . . . [and] has met the State standards for safety and sanitation." (D.I. 261 Ex. 1 Senato Decl. ¶ 3)

that on July 20, 2005, while he was working as a cook in the SCI kitchen, Defendant Adkins entered with a pan of beef cubes that, upon being torn apart, were revealed to contain "numerous worms inside the meat. . . . There's no way someone could put all them worms into those beef steaks." (D.I. 266 Johnson Decl. ¶ 8)  In another incident, Plaintiff Savage alleges that on the morning of June 29, 2008, while preparing to serve hotcakes to the inmate population, he noticed a foreign object in a hotcake, which DOC staff determined was a dead fly "entangled within" the cake. (D.I. 272 Savage Decl. ¶ 5)  He contends that kitchen staff failed to undertake any investigation into the source of the contamination.[7]  *Id.* ¶ 9.

Plaintiffs also claim that excessive heat in the "old side" kitchen causes inmate cooks to sweat profusely over the food they prepare. (D.I. 271 Walker Decl. ¶ 4; D.I. 276 Ex. C Blizzard Decl. ¶ 10)

Finally, plaintiffs claim that the "unsanitary food service environment" in the SCI kitchen is the consequence of failure to train food service correctional officers "on the recognition, avoidance, and prevention [of unhygienic working conditions], along with how to respond appropriately to a condition that is grossly inadequate." (D.I. 117 Ex. 1 at 6)

**Plaintiffs File Suit**

Plaintiffs filed this action on December 1, 2005 and the case was assigned to then-

---

[7]Defendants assert that both incidents involving vermin in food prepared in the SCI kitchen were determined to be the result of food tampering.  The July 2005 incident was investigated with assistance from the Delaware Department of Agriculture, which confirmed that the parasite was larvae, that could not have survived at the temperatures at which the meat was frozen and then cooked.  Thus, the larvae "had to have been placed in the food subsequent to cooking and prior to serving." (D.I. 261 Ex. 3 ¶ 6)  The June 2008 incident was determined to be the result of food tampering, "[b]ased upon the first hand observations . . . [of] the DOC Kitchen Staff."  (D.I. 261 Ex. 4 ¶ 2)

District Court Judge Kent A. Jordan. (D.I. 2) The Complaint was amended on February 28, 2006 and then again on September 22, 2006. (D.I. 71, D.I. 117) Judge Jordan was elevated to the Court of Appeals for the Third Circuit on December 15, 2006, at which point the case was reassigned to the vacant judicial position left by his elevation and referred to Magistrate Judge Mary Pat Thynge for all pretrial proceedings. (D.I. 131) The case was reassigned to District Court Judge Sue L. Robinson on February 1, 2008 and, on February 11, 2008, was referred to me "for all proceedings . . . through and including the pretrial conference." (D.I. 251) The discovery period ended on April 1, 2008. (D.I. 193) On May 19, 2008, defendants moved for summary judgment. (D.I. 260)

## STANDARD OF REVIEW

A grant of summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citation and quotation marks omitted).

## DISCUSSION

I.     **Which Plaintiffs Have Standing?**

Plaintiffs seek to consolidate their claims into a class action. Defendants argue that all plaintiffs other than Jackson lack standing – so that no class exists for the Court to certify – for one or more of the following reasons: 1) all plaintiffs except Jackson failed to exhaust the prison's administrative grievance procedure; 2) several plaintiffs failed to sign the Amended Complaint; (3) and several plaintiffs were not working in the SCI kitchen at the time suit was filed.

A class action may only be maintained if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). But "a prisoner acting *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Carter v. Taylor*, 540 F. Supp.2d 522, 526 (D. Del. 2008). Jackson cannot serve as class representative. Therefore, this action, if it is to proceed at all, may only proceed as an individual action by Jackson or, in the alternative, as a case involving multiple individual plaintiffs who have filed related, consolidated complaints. Either way, plaintiffs' class action certification request should be denied.

Defendants do not dispute that Jackson has standing to bring this suit. They concede that

he exhausted his administrative remedies prior to filing suit, that he signed the Amended Complaint, and that he was working in the SCI kitchen at the time suit was filed. (D.I. 261 ¶ 21; D.I. 261 Ex. 1 Senato Decl. ¶ 9) Because I find that the case fails on the merits, and that at least Plaintiff Jackson has standing, I need not determine if the other named plaintiffs should be dismissed for lack of standing. Even assuming, without deciding, that all 25 remaining plaintiffs (*see supra* n.3) do have standing, and treating this case as presenting 25 related individual actions, I recommend that summary judgment be granted to defendants, for the reasons explained below.

## II. Merits of Plaintiffs' Eighth Amendment Claim

Plaintiffs contend that the working conditions in the SCI kitchen violate the Cruel and Unusual Punishment Clause of the Eighth Amendment. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal citation omitted). The test for establishing a deprivation of a plaintiff's Eighth Amendment rights has both objective and subjective components. A plaintiff must "show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Tillman v. Lebanon County Correctional Facility,* 221 F.3d 410, 418 (3d Cir. 2000) (internal citations omitted).

The objective prong of an Eighth Amendment claim is "contextual and responsive to

contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. . . . The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."

*Id.* at 8-9 (internal quotation marks and citations omitted).

Moreover, a showing of "[a]ctual injury is a prerequisite to any claim under § 1983." *McCray v. Williams*, 357 F. Supp.2d 774, 780 (D. Del. 2005). "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

As noted above, plaintiffs have collectively alleged the following physical injuries resulting from their work in the "old side" SCI kitchen: eye irritation, dehydration, heat exhaustion, worsening asthma, slippery floors, and contaminated food. None of these satisfy the first prong of the Eighth Amendment test.

Eye irritation and dehydration are the kind of "routine discomforts" that the Supreme Court has held are "part of the penalty" of a prison sentence. *Hudson*, 503 U.S. at 8-9. Allegations of heat exhaustion and "breathing problems" from "inadequate ventilation or defective air ventilation" have likewise been found to fail the first prong of the Eighth Amendment "conditions of confinement" test. *Rivers v. Horn*, 2001 WL 312236, at *3 (E.D. Pa. Mar. 9, 2001) (summary judgment granted to defendant prison officials because sneezing, coughing, choking, heat exhaustion, extreme headaches, and loss of consciousness allegedly suffered in poorly-ventilated prison housing unit were not "extreme deprivations denying the

9

minimal civilized measures of life's necessities"). Here, even drawing all reasonable inferences in favor of plaintiffs, I conclude that the heat exhaustion and exacerbated asthma allegedly caused by the high temperatures inside the SCI kitchen are not "so reprehensible as to be deemed inhumane under contemporary standards or such that [they] deprive an inmate of a minimal civilized measure of the necessities of life." *Seawright v. Woods*, 2006 WL 694780, at *2 (D. Del. Mar. 17, 2006).

Likewise, plaintiffs' allegation that excessive humidity in the kitchen has caused inmates to routinely slip and fall on the "old side" floor does not constitute a sufficiently serious deprivation under the Eighth Amendment. In *Eley v. Kearney*, this Court held that an SCI inmate who injured his back after slipping on a wet floor caused by a leaky pipe did not meet the first prong of the "conditions of confinement" test:

> Plaintiff has not established that the alleged deprivation, an accumulation of water at the top of a flight of stairs, constitutes an "objectively, sufficiently serious" deprivation. The court concludes that, to the extent an accumulated slippery substance can be classified as a deprivation, it is better classified as inadvertent or negligent rather than obdurate or wanton. Consequently, the court concludes that plaintiff has not established that the accumulated water was sufficiently serious to constitute a violation of plaintiff's Eighth Amendment rights.

2005 WL 1026718, at *5 (D. Del. Apr. 25, 2005); *see also Santiago v. Guarini*, 2004 WL 2137822, at *2 (E.D. Pa. Sept. 20, 2004) ("Slippery prison floors are not objectively serious conditions giving rise to Eighth Amendment protection."); *Robinson v. Cuyler*, 511 F.Supp. 161, 163 (E.D. Pa.1981) (holding that slippery kitchen floor in prison is not hazardous enough to merit constitutional protection).

Finally, plaintiffs' allegations about contaminated conditions in the SCI kitchen also fail to satisfy the first prong of the Eighth Amendment test. Plaintiffs allege two incidents in which

contaminated food was discovered by inmate kitchen workers <u>before</u> the food was consumed, and thus before any inmate suffered any actual injury from ingestion. While the presence of insects in inmates' food would certainly be distressing, an inmate cannot bring a federal civil action for emotional or mental injury without a prior showing of physical injury. *See* 42 U.S.C. § 1997e(e); *see also Boulware v. Hill*, 2000 WL 1593989, at *2 (E.D. Pa. Oct. 24, 2000) ("One instance of a prisoner biting into a mouse contained in his lunch does not constitute a denial of the minimal civilized measure of life's necessities."); *Williams v. Lyons*, 1989 WL 32764, at *1 (E.D. Pa. Apr. 3, 1989) (presence of rats and bugs does not violate Eighth Amendment). Thus, plaintiffs have not come forward with evidence from which a reasonable jury could find a "sufficiently serious" deprivation under the objective prong or the basis for an Eighth Amendment violation. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991).[8]

### RECOMMENDED DISPOSITION

For the reasons set forth above, I find that defendants have met their burden of demonstrating the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. Therefore, I recommend that defendants' motion for summary judgment be GRANTED and judgment be entered in defendants' favor with respect to each remaining plaintiff.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

---

[8]Given my conclusion, there is no need to address defendants' arguments concerning the Eighth Amendment test's second, subjective prong nor their defenses based on qualified and state action immunity.

within ten (10) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir.1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

The Clerk of the Court is hereby directed to mail a copy of this Report and Recommendation and the standing order referred to above to each of the twenty-five remaining plaintiffs identified in footnote 3 above.

Dated: September 26, 2008

_____
Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE